United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SYDNEY L.,[1]
Plaintiff,
v.
SSA COMMISSIONER,
Defendant.

Case No. 25-cv-09940-JST

**ORDER DENYING SOCIAL SECURITY DISABILITY APPEAL**

Re: ECF No. 11

Before the Court is Plaintiff's request for reversal and remand of the Social Security Commissioner's denial of her application for disability insurance pursuant to 42 U.S.C. § 405(g). ECF No. 11. The Court will deny the request and enter judgment in favor of the Commissioner.

## I. BACKGROUND

Plaintiff is a resident of San Benito County, California. ECF No. 1 ¶ 3. Plaintiff applied for supplemental security income ("SSI") on May 20, 2022, alleging she was disabled beginning January 15, 2021. A.R. 17. The State agency responsible for evaluating disability claims on the behalf of the Commissioner of the Social Security Administration ("SSA") denied Plaintiff's claims. A.R. 17, 74, 83; ECF No. 11 at 5. Plaintiff then requested and received a hearing, which was held on December 9, 2024. A.R. 17, 105. At the hearing, Plaintiff and a vocational expert testified and she amended her alleged disability onset date to May 20, 2022. A.R. 17. On December 19, 2024, the Administrative Law Judge ("ALJ") presiding over the hearing issued a decision that Plaintiff was not disabled and upheld the SSA's denial of her claim. A.R. 14–28.

[1] Following the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court partially redacts Plaintiff's name to mitigate privacy concerns. *See also* Fed. R. Civ. P. 5.2(c)(2)(B).

The ALJ considered subjective testimony from Plaintiff about her difficulty getting along with others and difficulty concentrating, which allegedly prevented her from being able to work. A.R. 43. At the hearing, the vocational expert testified that based on Plaintiff's limitations as represented in the ALJ's hypothetical, Plaintiff could work as a laborer, hand-packer, or cleaner. A.R. 51–52. The ALJ further considered the examining medical source opinions of Doctors Pauline Bonilla, Psy.D.; Sandip Sen, M.D.; and Carol Johnson-Schroetlin, Psy.D. A.R. 25–27, 56–73.

In evaluating Plaintiff's claim of disability under the Social Security Act's five-step process, the ALJ found that (1) Plaintiff had not engaged in substantial gainful activity since the application date; (2) Plaintiff has severe impairments of intermittent explosive disorder, post-traumatic stress disorder, and bipolar disorder which "which significantly limit the ability to perform basic work activities;" (3) Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) Plaintiff has the residual functional capacity ("RFC") to perform work at all exertional levels but can only understand, remember, and carry out simple instructions and can only have occasional interaction with coworkers, supervisors, and the general public; and (5) "considering [her] age, education, work experience, and residual functional capacity, [Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." A.R. 25–34. Therefore, the ALJ determined Plaintiff was not disabled as defined by the Social Security Act. A.R. 28; 20 C.F.R. 416.920(g).

Following the ALJ's ruling, Plaintiff requested review of the decision, which the Appeals Council denied on September 30, 2025. A.R. 1–3. Upon denial of the request for review, Plaintiff filed a complaint against the Social Security Commissioner on November 19, 2025. *See* ECF No. 1. Plaintiff seeks reversal of the ALJ's ruling and the Commissioner's final decision or, in the alternative, for the Court to remand the matter for a new hearing or proceedings under 42 U.S.C. § 405(g). *Id.* at 3.

## II. JURISDICTION

This court has jurisdiction over the final determination of the Commissioner of Social

Security under 42 U.S.C. § 405(g).

## III. LEGAL STANDARD

As the Ninth Circuit has summarized:

> The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act. The burden of proof is on the claimant as to steps one to four. As to step five, the burden shifts to the Commissioner. If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citation modified).

> The five-step process requires the ALJ to determine: (1) whether the claimant is presently working in a substantially gainful activity; (2) whether the claimant's impairment is severe; (3) whether the impairment meets or equals one of a list of specific impairments described in the Social Security Regulations; (4) whether the claimant is able to do any work that he or she has done in the past; and (5) whether the claimant is able to do any other work.

*Maxwell v. Saul*, 971 F.3d 1128, 1130 n.2 (9th Cir. 2020) (citation modified).

Upon notice of an unfavorable final decision and within sixty days, a plaintiff may seek judicial review of the Social Security Commissioner's final decision regarding the denial of disability benefits. 42 U.S.C. § 405(g). A court can "set aside" the Commissioner's denial of benefits where the ALJ's findings are "based on legal error" or "are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097–98. "Substantial evidence is 'more than a mere scintilla but less than a preponderance.'" *Tackett*, 180 F.3d at 1098 (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)); *see also Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992) ("[Substantial evidence] means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In reviewing the administrative record and ALJ's findings, a court "[weighs] evidence that supports and evidence that detracts from the ALJ's determination." *Drouin*, 966 F.2d at 1257 (citing *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986)). "Where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the ALJ." *Id*. at 1258.

Courts will uphold decisions where legal error is harmless, i.e. "inconsequential to the

ultimate nondisability determination." *Rolando Jose G. v. Commissioner of Social Security*, No. 25-cv-04141-JST, 2026 WL 1284864, at *3 (N.D. Cal. 2026) (quoting *Treichler v. Commissioner of Soc. Sec. Administration*, 775 F.3d 1090, 1099 (9th Cir. 2014)) (internal quotations omitted). "An error is harmful when it has some consequence on the ultimate non-disability determination." *Bess v. Saul*, No. 2:19-cv-01675 AC, 2020 WL 7769834, at *7 (E.D. Cal. 2020) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006)). Courts may not uphold the denial of benefits based on any rationale "not invoked by the Commissioner in denying the benefits originally." *Rolando*, 2026 WL 1284864, at *3 (citing *Pinto v. Massanari*, 249 F.3d 840, 847–48 (9th Cir. 2001)).

## IV. DISCUSSION

Plaintiff requests that the Court set aside the ALJ's findings on the grounds that the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's testimony and failed to properly evaluate the medical source opinions of Dr. Bonilla, Dr. Sen, and Dr. Johnson-Schroetlin. ECF Nos. 1, 11.

### A. Plaintiff's Testimony

Plaintiff first argues that the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's allegations of mental dysfunction, which impeded her ability to concentrate, remember, accept and follow instructions, and get along with others. ECF No. 11 at 7–11. According to Plaintiff, these difficulties are supported by her own testimony and corroborated by the medical evidence. *Id*. The Court concludes that the ALJ provided clear and convincing reasons for discounting Plaintiff's testimony about the severity of her symptoms.

In SSI benefits claims, the ALJ will consider direct testimony from claimants because "symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone." 20 C.F.R. § 416.929(c)(3). The ALJ will also consider "factors relevant to [the claimant's] symptoms," including: the claimant's daily activities; the type, dosage, effectiveness, and side effects of medication to alleviate symptoms; and any other treatment received for relief of symptoms. 20 C.F.R. § 416.929(c)(3)(i), (iv), (v). The claimant's "statements about [] pain or other symptoms" alone will not establish that the claimant is disabled,

20 C.F.R. § 416.929(a), so the claimant's statements about disability are evaluated alongside other objective medical evidence. *Id.*; *see id.* § 416.929(c)(2) (defining objective medical evidence). An ALJ also considers "whether there are any inconsistencies in the evidence." 20 C.F.R. § 416.929(c)(4).

An ALJ must engage in a two-step analysis to determine the extent to which she will credit a claimant's personal testimony, first evaluating whether there is objective medical evidence of an impairment which could "reasonably be expected to produce" the alleged symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (citing *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014)). The court may decline to credit the testimony altogether if there is no evidence of an underlying impairment. *Id*. If this first prong is satisfied, an ALJ can decline to credit a claimant's personal testimony about the *severity* of alleged disabling symptoms "only by offering specific, clear and convincing reasons for doing so." *Id*. (citation omitted). To meet this standard, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints," *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation omitted).

Defendant does not contest that the objective medical evidence "established the presence of medically determinable psychological impairments that could reasonably produce Plaintiff's reported mental dysfunction." *See* ECF No. 11 at 8; A.R. 23. Rather, the administrative record makes clear that the ALJ only declined to credit Plaintiff's allegations insofar as they implicate the "extent and limiting effects of her symptoms." *Id*. at 24. Defendant contends that the ALJ discounted the severity of Plaintiff's symptoms in light of the following factors: (1) Plaintiff's activities of daily living; (2) persuasive medical opinions and prior administrative medical findings; and (3) evidence of only conservative or minimal treatment during the period at issue.

"The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits." *Fair v. Bowen*, 885 F.3d 597, 603 (9th Cir. 1989) (superseded by statute on other grounds). However, "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that *are* transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess

pain." *Id.* (emphasis in original); *see also Valentine v. Astrue*, 574 F.3d 685, 693 (9th Cir. 2009) (upholding ALJ determination that evidence of daily activities "suggest[ed] that [Plaintiff's] later claims about the severity of his limitations were exaggerated").

Evidence of Plaintiff's ability to perform activities of daily living undermines her testimony about the severity of her symptoms and suggests an ability to perform certain forms of work. Counseling appointments from 2023 and 2024 noted no significant issues with daily activities. A.R. 24. Although Plaintiff denied having any hobbies or interests at her hearing, she told medical providers that she loves participating in wrestling, football, and soccer, playing with her cat, and dancing. *Id.* Similarly, although she described issues with interpersonal relationships, she maintained a long-term boyfriend. *Id.* She had also completed high school and some college, which suggested that her memory and concentration issues were mild. A.R. 25. Likewise, Plaintiff reported no issues preparing simple meals, doing laundry, vacuuming, sweeping, and shopping in stores a few times a month for a couple of hours. A.R. 23. She was able to care for a cat and a dog but required reminders to feed them. A.R. 24. This evidence significantly erodes Plaintiff's claims that her difficulties concentrating and interacting with others were so severe as to prevent her from performing any work, and is consistent with the ALJ's finding that Plaintiff could work as a laborer, hand packer, or cleaner.

The ALJ's determination was also supported by the objective medical evidence that Plaintiff's mental limitations were moderate, not severe. A.R. 25. For instance, Dr. Bonilla's opinion was that Plaintiff's ability to perform simple and repetitive tasks was mildly impaired and her ability to perform detailed and complex tasks moderately impaired. *Id.* Her abilities to accept instructions, attend and complete a normal workday without interruptions or special supervision, and deal with stress were also mildly to moderately impaired. *Id.* The ALJ found this opinion "well-supported and grossly consistent" with other evidence. *Id.* Dr. Sen's December 2022 opinion that Plaintiff could remember simple 1-2 step instructions, carry out simple 1-2 step work, tolerate occasional social contact, and adapt to a simple routine was also "generally persuasive." A.R. 25. The ALJ also found persuasive Dr. Hillary Weiss's opinion from May 2023 that Plaintiff could learn and perform simple tasks and tolerate limited social or personal contact. A.R. 25–26.

Plaintiff argues that the ALJ only "summarily concluded that the evidence was not consistent with Plaintiff's allegations" and did not meaningfully address any inconsistencies. ECF No. 11 at 9–10. But the ALJ explained that these opinions spoke to a lower severity of impairment than the Plaintiff described—one compatible with the ability to maintain some forms of work. Plaintiff also asserts that "the ALJ failed to explain why Plaintiff's allegations that she had difficulty concentrating were not consistent with the medical evidence," ECF No. 11 at 9, but the ALJ credited and took into account Plaintiff's difficulty concentrating. *See* A.R. 24 (finding Plaintiff could only understand, remember, and carry out simple instructions); A.R. 25 (crediting Dr. Bonilla's finding that Plaintiff's ability to perform simple and repetitive tasks was mildly impaired and her ability to perform detailed and complex tasks moderately impaired). Similarly, Plaintiff argues that "the ALJ failed to explain why Plaintiff's allegations that she had difficulty interacting with others were not consistent with her examination findings," ECF No. 11 at 9, but the ALJ again credited and took into account this difficulty. *See* A.R. 24 (finding Plaintiff can have occasional interaction with coworkers, supervisors, and the general public); A.R. 26 (noting that Plaintiff previously "stopped work due to conflicts with coworkers (which warrants a limitation to only occasional interaction with others"). The medical evidence likewise supports the ALJ's determination that, contrary to Plaintiff's testimony, her limitations were not so severe as to prevent her from engaging in any form of work.

Finally, the ALJ considered the fact that Plaintiff had not taken medication, been hospitalized, or received any treatment beyond sporadic talk therapy (six times in a year). A.R. 23–24. To the extent that the ALJ relied on this fact without considering alternative explanations for Plaintiff's failure to seek treatment, she erred. But because of the remaining clear and convincing evidence in the record, that error was harmless.

"[T]he Ninth Circuit has cautioned against using failure to seek treatment for a mental impairment as a reason to discount evidence in the record." *J.F. v. Saul*, No. 20-cv-04320-NC, 2021 WL 4980080, at *7 (N.D. Cal. 2021). Though not controlling, the SSA's guidance states that "[the agency] will not find an individual's symptoms inconsistent with the evidence in the record on [the basis of the Plaintiff's failure to seek or follow treatment] without considering

possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." 82 Fed. Reg. 49462, 49466 (Oct. 25, 2017). Such reasons include "structur[ing] his or her activities to minimize symptoms to a tolerable level by avoiding physical activities or mental stressors that aggravate his or her symptoms" and "not understand[ing] the appropriate treatment for or the need for consistent treatment of his or her impairment." *Id*. However, "[w]hile there are any number of good reasons for not [seeking treatment] . . . a claimant's failure to assert one, or a finding by the ALJ that the [proffered] reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony." *Fair*, 855 F.2d at 603. Here, the plaintiff did not offer any explanation in her testimony or the administrative record for her failure to pursue consistent treatment, nor has she alleged any such explanation in her briefing aside from a general assertion that she was "repeatedly noted to have limited or poor insight into her mental condition." ECF No. 14 at 3. However, it is unclear if Plaintiff was given an opportunity to provide the ALJ with a reason for her perceived failure to seek treatment or notice that the ALJ intended to decline to credit her testimony on this ground. *See* A.R. 40–50. The ALJ may have erred by finding Plaintiff's history of conservative or minimal treatment inconsistent with her alleged symptoms and disability without considering the potential reasons for failure to seek treatment. See *J.F.*, 2021 WL 4980080 at *7 ("By not addressing any of the potential explanations offered in the record for J.F.'s inability to seek more aggressive treatment, the ALJ committed reversible error."). But because the medical record and evidence of Plaintiff's daily activities provide clear and convincing evidence sufficient to contradict the professed severity of Plaintiff's symptoms, any error was harmless.

Plaintiff also contests the ALJ's finding that Plaintiff's condition improved over the relevant time period. ECF No. 11 at 10. This finding was also supported by clear and convincing evidence. For instance, the ALJ noted that while issues with activities of daily living were noted in 2019 and 2022 therapy visits, more recent ones in 2023 and 2024 noted none. A.R. 24. And while a January 2019 report by Dr. Johnson-Schroetlin concluded that Plaintiff's ability to maintain basic daily life skills and care for her child were impacted by her disabilities, the ALJ gave that report little weight because (1) it predated the relevant period by over three years; (2)

relied in part on contemporaneous drug use, which has since ceased; and (3) after the report, Plaintiff worked at Safeway for about eight months. A.R. 26. Finally, even if the ALJ had erred in noting evidence of improvement over time, such a finding would be harmless because of the significant evidence described above showing that Plaintiff's limitations were not so severe as to prevent her from working.

The ALJ therefore properly relied on clear and convincing evidence in rejecting the severity and extent of Plaintiff's claimed limitations. A.R. 23–27.

**B. Medical Opinions**

Plaintiff argues that the ALJ failed to properly evaluate the medical opinions and prior administrative medical findings of Doctors Bonilla, Sen, and Johnson-Schroetlin in calculating Plaintiff's residual functional capacity ("RFC"). ECF No. 11 at 12–22. Plaintiff further argues that in failing to properly evaluate these medical opinions, the ALJ failed to take into account Plaintiff's limitations and pose accurate hypotheticals to the vocational expert, thus committing harmful legal error. *Id.*

For all claims brought after March 27, 2017, the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 416.920c(a). Claims which are subject to the new regulations no longer adhere to a "hierarchy of medical opinions" which "assign[s] presumptive weight based on the extent of the doctor's relationship with the claimant," also known as the treating source rule. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). Instead, an ALJ will consider several factors including supportability, consistency, the medical source's relationship with the claimant, medical specialization, and others to determine the weight it will afford a given medical opinion. 20 C.F.R. § 416.920c(c)(1)–(5). A medical source opinion is more or less supportable based on the relevance of "the objective medical evidence and supporting explanations presented by a medical source" in "support[ing] his or her medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 416.920c(c)(1). And "[t]he more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources in the claim," the more persuasive it is. *Id.* § 416.920c(c)(2). Supportability

United States District Court
Northern District of California

and consistency are the two most important factors, and an ALJ is required to explain how she considered these factors in evaluating the persuasiveness of a given medical opinion or prior administrative medical findings. *Id*. § 416.920c(b)(2). An ALJ's evaluation of the persuasiveness of a given medical opinion must be supported by "substantial evidence." *Woods*, 32 F.4th at 792 (holding that "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence").

**1. Dr. Bonilla's Medical Source Opinion**

Neither party disputes that Dr. Bonilla's opinion was persuasive. ECF No. 11 at 13; ECF No. 13 at 12. Rather, Plaintiff's argument is that the ALJ "failed to incorporate crucial limitations set forth" in Dr. Bonilla's opinion and did not "provide any rationale for rejecting any portion of" it. ECF No. 11 at 13–14. In doing so, Plaintiff argues, the ALJ posed hypotheticals to the vocational expert which did not encompass all of the plaintiff's limitations and thus committed harmful legal error. *Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) ("If an ALJ's hypothetical does not reflect all of the claimant's limitations, then 'the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.'" (quoting *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991)). The ALJ's RFC found Plaintiff able to "understand, remember, and carry out simple instructions" and have "occasional interaction" with others at work. A.R. 23. Plaintiff argues that the ALJ failed to incorporate into the hypothetical Plaintiff's moderate limitations in completing a normal workday, dealing with stress or change, and emotionally deteriorating[2]—which, according to Plaintiff, correspond to a need for breaks or absences and restrictions to a low stress or static work environment. ECF No. 11 at 14.

In *Bagby v. Comm'r of Soc. Sec.*, the Ninth Circuit held in an unpublished decision that "the ALJ posed an incomplete hypothetical to the vocational expert" because it did not incorporate

[2] Dr. Bonilla's opinion was that Plaintiff had limitations in her ability to perform simple and repetitive tasks (mild); perform detailed and complex tasks (moderate); accept instructions from a supervisor (mild to moderate); complete a normal workday or workweek without interruptions from a psychiatric condition (moderate); and deal with stress and changes encountered in a workplace (moderate). A.R. 582. Dr. Bonilla also stated there was a moderate likelihood that she would emotionally deteriorate in a work environment. *Id*.

plaintiff's ability to "respond appropriately to usual work situations and to changes in a routine work setting," which was distinct from her "limited ability to interact with others, to understand, remember, and follow complex instructions, and to make judgments on complex work-related decisions." 606 F. App'x 888, 890 (9th Cir. 2015) (citation modified). And in *Nanney v. Kijakazi*, another court within this Circuit found that "the RFC limiting Plaintiff to understanding, remembering, and carrying out simple instructions, maintaining concentration, persistence, and pace for 2-hour intervals, occasionally interacting with coworkers and the general public, and adapting to simple workplace changes [did] not account for Dr. Bonilla's findings of moderate limitations in Plaintiff's ability to complete a normal workday/work week and the likelihood of emotional deterioration." No. 1:21-CV 00527-HBK, 2023 WL 8242052, at *5 (E.D. Cal. Nov. 28, 2023). This Court agrees that limitation to simple work and occasional interpersonal interaction do not necessarily fully account for inability to complete a normal workday or likelihood of emotional deterioration at work.

Nevertheless, the Court will only reverse an ALJ's decision if it finds the ALJ has committed harmful legal error, or if it has not met the substantial evidence standard. *Tackett*, 180 F.3d at 1097–98. The "SSA defines a 'moderate' limitation to mean '[t]here is more than a slight limitation in this area, but the individual can still function satisfactorily.'" *Rose M. E. v. Saul*, No. 5:20-cv-01199, 2021 WL 1612091, at *3 (C.D. Cal. Apr. 26, 2021) (citation omitted). Given the metric of "satisfactory functioning," it is does not necessarily follow that further modifications to the hypothetical posed to the vocational expert were required. And Plaintiff identifies no evidence linking the limitations to the proposed accommodations of "additional breaks, time off tasks, or workplace absences" or "restrictions to a low stress environment or no more than occasional changes to the work setting." ECF No. 11 at 14. The record also does not suggest that the jobs identified—cleaner, hand packer, laborer—involve a stressful or dynamic work environment that would implicate those proposed accommodations. And before the ALJ was testimony by the vocational expert that someone would be employable in those roles despite needing to be absent one day a month or 10% of the time. A.R. 52–53. Because the ALJ expressly identified Dr. Bonilla's "opinion of overall moderate mental limitations," A.R. 25, and posed questions to the

vocational expert based on those findings, A.R. 51–52, the ALJ did not commit harmful legal error in its evaluation of Dr. Bonilla's opinion.

**2. Dr. Sen's Medical Source Opinion**

Plaintiff argues that the ALJ committed legal error by rejecting Dr. Sen's opinion that Plaintiff could only perform "simple 1-2 step instructions" on the grounds that "simple 1-2 step instructions" is not "policy compliant language." ECF No. 11 at 17–19. It is not clear what the ALJ meant by "policy compliant," although the parties assume that it is related to the supportability of the opinion.[3] ECF No. 11 at 17–18; ECF No. 13 at 17.

An ALJ may find an opinion unpersuasive if it is either unsupported or inconsistent with other evidence. *Woods*, 32 F.4th at 792. The ALJ explained Dr. Sen's opinion, deemed its persuasive value "limited," and then juxtaposed it with the "overall record" and two other medical opinions—Dr. Bonilla's opinion that "the claimant has the ability to understand, remember, and carry out simple instructions," and Dr. Weiss's opinion that the claimant could "learn simple tasks reliably" and "sustain concentration, persistence, or pace for simple tasks." A.R. 25–26. As Defendant points out, Plaintiff does not contest the ALJ's finding that Dr. Sen's opinion limiting Plaintiff to one-to-two step tasks is inconsistent with other evidence in the record. ECF No. 13 at 17. Plaintiff has therefore failed to show that the decision to reject this portion of Dr. Sen's opinion was unsupported by substantial evidence.

**3. Dr. Johnson-Schroetlin's Medical Source Opinion**

Plaintiff argues that the ALJ did not adequately explain the decision to discount the medical opinion of Dr. Johnson-Schroetlin. ECF No. 11 at 20. On the contrary, the ALJ's decision was supported by substantial evidence and sufficiently explained why the opinion lacked both supportability and consistency. ECF No. 13 at 17–18.

The ALJ concluded that Dr. Johnson-Schroetlin's findings were largely not relevant because the examination of Plaintiff occurred more than three years before the relevant period, was conducted to evaluate Plaintiff's fitness as a parent for custody purposes, and was affected by

[3] The Ninth Circuit has noted that "ALJs should endeavor to use these two terms of art—'consistent' and 'supported'—with precision" to avoid confusion. *Woods*, 32 F.4th at 793, n.4.

Plaintiff's drug use, which has since ceased. A.R. 26–27. Moreover, after the examination, Plaintiff held a job at Safeway for eight months. A.R. 26. To provide substantial evidence of a supportability or consistency finding, an ALJ need only provide "more than a mere scintilla but less than a preponderance" of the evidence. *Tackett*, 180 F.3d at 1098. On that note, "[m]edical opinions that predate the alleged onset of disability are of limited relevance." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (citing *Fair*, 885 F.2d at 600). The ALJ provided substantial evidence that Dr. Johnson-Schroetlin's medical opinion was not supported.

**CONCLUSION**

For the foregoing reasons, the Court concludes that Plaintiff has failed to identify harmful legal error. The decision of the Commissioner of Social Security is affirmed. The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated: September 9, 2026

JON S. TIGAR
United States District Judge